IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| SEIRUS INNOVATIVE ACCESSORIES, INC., a Utah corporation,<br><br>  Plaintiff,<br><br>v.<br><br>DO-GREE FASHIONS, LTD., a Canadian corporation,<br><br>  Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:05-CV-355<br><br>Judge Dee Benson |

Plaintiff Seirus Innovative Accessories, Inc. moved to alter the Court's Order on claim construction, pursuant to Fed. R. Civ. P. 59(e) or 60(b)(6).  In its motion, Plaintiff states that the Court construed the claims on both U.S. Patent No. 6,272,690 (the "'690 Patent") and U.S. Patent No. 5,214,804 (the "'804 Patent") contrary to the law and inconsistent with the evidence on record.  On April 4, 2008, the Court held a hearing and heard arguments by the parties on Plaintiff's Motion to Alter the Court's Claim Construction.

**I. Background**

Both Plaintiff and Defendant Do-Gree Fashions, Ltd. are in the business of designing and selling ski accessories, including protective facial clothing.  Plaintiff owns the '690 Patent and the '804 Patent.  The protective clothing encompassed in the '804 Patent includes a mask member covering a user's face and a scarf member covering the neck.  Although similar to the '804 Patent, the '690 Patent includes sport goggles and a fleece hood-like head member to cover a user's entire head and face.  In its complaint, Plaintiff alleges that these two patents have been

infringed by Defendant.  On February 15, 2008, the Court held a *Markman* hearing and heard arguments by the parties on claim construction issues.  On February 26, 2008, the Court issued its Memorandum Decision and Order.  (*See* Memorandum Decision and Order, Dkt. No. 188) ("Order").  The Court held that claim 1 of the '690 Patent that "sport goggles for positioning over the eyes" means the sport goggles must be placed over the eyes of the user.  (*Id.* at 9.)  The Court also held that "sport goggles" does not include sunglasses.  (*Id*. at 7.*)*  Furthermore, the Court decided that "scarf member," found in claim 4 of the '804 Patent, is: an article of clothing for protecting the neck in adverse weather which is secured to the lower edge of the mask member, extending no higher than the user's temples, which extends from the lower edge of the mask substantially the height of the neck.  (*Id*. at 4.)

## II.  Legal Standard

Grounds warranting a motion to alter or reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.  *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)).  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."  *Id.*  However, a motion to alter cannot be used to "revisit issues already addressed or advance arguments that could have been raised in prior briefing."  *Id.*

## III.  Discussion

Claim construction is a question of law.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).  "[I]n interpreting an asserted claim, the court should look to the intrinsic

evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The claim term should be read "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*).

**A.**     **"Sport Goggles For Positioning Over the Eyes of a User"**

The language of claim 1 of the '690 Patent requires "sports goggles for positioning over the eyes of a user, said sport goggles having a height, a width." '690 Patent.  The Court held that "sport goggles for positioning over the eyes" means that the sport goggles must be placed over the eyes of the user.  (*See* Order at 9.)  Plaintiff argues that the Court's interpretation is contrary to the law because it is inconsistent with the term "for positioning" as used elsewhere in the claim language and the specification.  At the April 4, 2008 hearing, Plaintiff conceded that sport goggles are a required element in the claimed combination.  However, Plaintiff contends that "for positioning" means "positionable" and thus, sport goggles may be physically positioned anywhere on the protective clothing.  For example, when a user is wearing the protective clothing, sport goggles placed over the ear, neck or mouth of a user would be within the '690 Patent monopoly.

The same terms appearing in different portions of the claims should be given the same meaning absent a clear indication otherwise in the specification and the prosecution history.  *See PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1366 (Fed. Cir. 2007).  The language of claim 1 and the specification do not describe the interrelationship between the sport goggles and the protective clothing.  *See* '690 Patent.  Hence, the Court finds that the prosecution history is

critical in ascertaining the meaning of "sport goggles for positioning over the eyes."

As originally filed, the application that issued as the '690 Patent included twenty claims all directed to an "article of clothing." (*See* Dkt. No. 172-3 at SA004966-68.) The applicants amended their original claims and included claims for "an article of clothing for optimal use with sport goggles" and "an article of clothing use with sport goggles." (*See* Dkt. No. 172-6 at SA001539-41.) The applicants characterized their invention to the Patent and Trademark Office ("PTO") as a "scarf member with the head member and mask member assembled to define an opening for the eyes *which is to be covered by sport goggles*." (Dkt. No. 172-2 at SA004902) (emphasis added). The eye opening in the article of clothing was described with edges spaced in height for goggles. (*See* Dkt. No. 172-2 at SA004904.) The examiner repeatedly rejected all of the claims as obvious over U.S. Patent No. 5,214, 804 ("Carey"), in view of U.S. Patent No. 2,039,478 and U.S. Patent No. 3,725,956. (*See* Dkt. No. 172-5 at SA001503.) Carey clearly taught a protective mask for use with goggles. (*See* Dkt. No. 172-4 at SA001449.) Other prior art references, such as U.S. Patent No. 4,250,577, also encompassed a protective mask for use with goggles. (*See* Dkt. No. 171-7 at SA001296.)

The applicants attempted to overcome the examiner's rejection of the '690 application claims as obvious by arguing that "Carey does not teach constructing the head member and mask member to define *an eye opening sized to be covered by sport goggles*." (Dkt. No. 172-6 at SA001545-46) (emphasis added). Furthermore, the applicants argued that "Carey clearly does not teach, suggest or infer that one could construct something that *completely surrounds* the head." (Dkt. No. 172-2 at SA004903) (emphasis added). The use of the phrase "completely surrounds" suggests that the applicants intended that sport goggles cover the eye opening in the

protective clothing.  After final rejection, the applicants appealed to the Board of Patent Appeals and Interferences ("Board").  On appeal, the applicants again argued that "CAREY does not teach constructing the head member and the mask member to define *an eye opening to be covered by sport goggles*."  (Dkt. No. 172-4 at SA001450) (emphasis added).  The Board affirmed the examiner's final rejection of the claims of the '690 Patent as obvious.  (*See* Dkt. No. 172-4 at SA001414.)  Subsequently, claim 24 fo the '690 application issued as claim 1 of the '690 Patent.  (*See* Dkt. No. 172-3 at SA001393.)  Claim 1 is the only claim of the '690 Patent and it was the only claim in the application directed to "a combination" of sport goggles and an article of protective clothing.  *See* '690 Patent.

Based on the Plaintiff's representations to the PTO regarding the position of the sport goggles in relation to the protective clothing, the sport goggles were always represented as being positioned over the eye opening of the protective clothing.  Moreover, there is no evidence in the prosecution history or the specification supporting any other location of the sport goggles on the protective clothing.  The Court recognizes that "for positioning" includes a temporal element allowing sport goggles to be removed from the protective clothing.  However, "if anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant."  *In re Metoprolol Succinate Patent Litigation*, 494 F.3d 1011, 1023 (Fed. Cir. 2007) (quoting *Leeds & Catlin Co. v. Victor Talking Mach. Co.*, 213 U.S. 301, 318 (1909)).  Thus, the Plaintiff's claimed combination does not exist  until the sport goggles are physically positioned over the eye opening of the protective clothing.

Finally, the Plaintiff cannot prosecute its patent to include a combination of sport goggles

and protective clothing to avoid the prior art, and then argue that the interrelationship between the sport goggles and the protective clothing is irrelevant. The Plaintiff's position that the sport goggles can be placed anywhere on the protective clothing would render claim 1 of the '690 patent invalid as indefinite. "[A] claim which fails to interrelate essential elements of the invention as defined by the applicant(s) in the specification may be rejected under 35 U.S.C. 112, second paragraph, for failure to point out and distinctly claim the invention." Manual of Patent Examining Procedure ("MPEP"), § 2172.01 (8th ed., rev. 5, 2006) (citing *In re Venezia*, 530 F.2d 956, 958-59 (CCPA 1976)). Claiming that the sport goggles can be placed anywhere on the protective clothing fails to point out and distinctly claim the invention. Further, placing the sport goggles anywhere on the protective clothing is the equivalent of the already rejected "article of clothing for use with sport goggles" claims because essentially all function and limitations associated with the sport goggles are removed from the '690 Patent.

Therefore, the language in claim 1 of the '690 patent, "sports goggles for positioning over the eyes of a user" requires that the sport goggles be placed over the eye opening of the protective clothing.[1]

## B. Characteristics of Sport Goggles

The specification of the '690 Patent states that "the sport goggles 80 typically have a least an upper edge portion to rest upon the forehead of the user." *See* '690 Patent. The Court held that the term "sport goggles" does not include sunglasses. (*See* Order at 7.) Plaintiff argues that the Court's interpretation categorically, and erroneously, excludes all sunglasses from the

---

[1] The Court notes that this construction alters its prior construction that "the sport goggles must be placed over the eyes of the user." (*See* Order at 9.)

category of sport goggles.  In the prosecution of the application that issued as the '690 Patent, the applicants attempted to overcome an indefiniteness rejection by arguing:

> [T]he goggles are for outdoor use and have an upper edge on the forehead of the user and a lower edge extending over the bridge of the nose of a user.  There is a lens area there between.  The lens area is to be defined to have a height between the upper edge and the lower edge.  Thus the class or type of *sport goggles will be very specifically delineated.*

(Dkt. No. 172-5 at SA001489) (emphasis added).  The plain and ordinary meaning of sunglasses clearly does not meet the applicants' definition of sport goggles.  Furthermore, having considered the Plaintiff's arguments, the Court has determined that the Plaintiff is merely revisiting issues already addressed by the Court and the Courts interpretation of "sport goggles" is not clearly erroneous.

**C.     Scarf Member**

The language of claim 4 of the '804 Patent includes "a scarf member secured to said mask member along said lower edge, scarf member being sized to extend from said lower edge substantially the height of the neck of the user and in width rearwardly about the neck on both sides of the head."  '804 Patent.  The dispute here was over what area the "scarf member" covers.  The Court held that "scarf member" is: an article of clothing for protecting the neck in adverse weather which is secured to the lower edge of the mask member, extending no higher than the user's temples, which extends form the lower edge of the mask substantially the height of the neck.  (*See* Order at 4.)  Plaintiff argues that the Court's construction misapprehends the controlling law and Plaintiff's position as to the height of the scarf member.  Plaintiff contends that there is no limitation precluding the scarf member from extending above the temple area. Having considered the Plaintiff's arguments, the Court finds that its construction is not clearly

erroneous, nor did the Court misapprehend the Plaintiff's position as to the height of the scarf member.

    IT IS SO ORDERED.

    DATED this 11th day of April, 2008.

                                             Dee Benson
                                             United States District Judge